IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TERRELL DAVEZ CORNELIUS,          )
                                  )
                Petitioner,       )
                                  )
        v.                        )      1:13CV1010
                                  )
LIEUTENANT LEWIS SMITH,           )
                                  )
                Respondent.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Terrell Davez Cornelius, a prisoner of the State of North Carolina serving a life sentence following convictions for burglary and felony murder, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)  Both Cornelius and Respondent have moved for summary judgment. (Docs. 5, 7.)  For the reasons set forth below, the court finds that Cornelius fails to meet the standard for federal habeas relief.  Consequently, his motion will be denied, Respondent's motion will be granted, and the petition will be dismissed.

## I.   BACKGROUND

The basic facts and procedural background underlying the petition are set out by the North Carolina Court of Appeals in Cornelius' direct appeal as follows:

> The State's evidence tended to show the following facts.  Rodney Fraley, Danny Cordray, and defendant went to Leon Conrad's house to rob him late on the evening of

8 November 2007 or early in the morning of 9 November 2007. All three men were armed with semi-automatic weapons. Fraley had suggested the robbery after spending the day with Conrad and seeing $50,000.00 in cash, which he expected to be in Conrad's truck. When the men found the truck locked, defendant kicked in the main front door. As Cordray and defendant entered the residence, both of them shot at Conrad, and Conrad shot back.

Conrad ultimately died of gunshot wounds to his chest. Defendant, who was shot in the hands and abdomen, was admitted to Wake Forest University Baptist Medical Center on 9 November 2007 between 1:40 and 1:50 a.m. Defendant underwent exploratory surgery to make sure there were no injuries inside his abdomen. In addition, an orthopedic surgeon addressed the injuries to his hands. Defendant was then moved to a non-ICU, standard bed in the hospital.

At 11:05 a.m. that morning, Detective Michael Poe of the Winston-Salem Police Department visited defendant in the hospital. Defendant's mother and sister were in the room with him. In a recorded statement, defendant told Detective Poe that he had been the victim of a robbery. However, after Detective Poe later learned the name of another individual involved in the shooting, Detective Poe went back to speak with defendant again that afternoon around 3:40 p.m. During this conversation, which was also recorded, defendant admitted that his previous statement had not been truthful and that he was shot while attempting to rob Conrad. Defendant also admitted to kicking in the door at Conrad's home and to firing a gun.

Detective Poe visited defendant in the hospital a third time three days later on 12 November 2007. The purpose of this interview, also recorded, was to clarify some issues. This time, defendant admitted that he, Fraley, and Cordray had wanted to steal $50,000.00 from Conrad.

Defendant was indicted for first degree murder on 7 July 2008. Defendant was later indicted for first degree burglary with two aggravating factors on 10 November 2008. Defendant subsequently filed a motion to suppress the statements made in the hospital as involuntary. The trial court denied the motion in an order filed 26 February 2009.

Consequently, the jury was allowed to hear at trial the recordings of defendant's three statements.

A jury found defendant guilty of first degree burglary on 11 March 2009. It was, however, unable to reach a unanimous verdict with respect to the felony murder indictment, and the trial court, therefore, declared a mistrial on the murder charge. The judge also granted a prayer for judgment continued as to the first degree burglary sentence pending a second trial on the first degree murder charge.

State v. Cornelius, 723 S.E.2d 783, 784-85 (N.C. Ct. App. 2012).

During the second trial, the judge instructed the jury as follows:

[B]ecause it has previously been determined beyond a reasonable doubt in a prior criminal proceeding that Mr. Cornelius committed first degree burglary on November 9th, 2007, . . . you should consider that this element [of felony murder (that defendant committed the felony of first degree burglary)] has been proven to you beyond a reasonable doubt.

Id. at 787. Cornelius was found guilty of felony murder and sentenced to life in prison without parole. Id. at 785. The North Carolina Court of Appeals upheld the conviction, and the Supreme Court of North Carolina dismissed the appeal. State v. Cornelius, 731 S.E.2d 173 (N.C. 2012).

Cornelius made no further attempt at relief in the State courts, but instead proceeded with the present petition in this court. Both Respondent and Cornelius have now filed motions for summary judgment, which are ripe for resolution.

3

## II.  ANALYSIS

This court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d).  More specifically, the court may not grant relief unless a State court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id.  "Clearly established Federal law" includes only "'holdings, as opposed to dicta,'" of the Supreme Court of the United States.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Howes v. Fields, 132 S. Ct. 1181, 1187 (2012)).

To qualify as "contrary to" Supreme Court precedent, a State court decision either must arrive at "a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or "confront[] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[] at a result opposite" to the Supreme Court's.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A State court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the

4

facts of the particular state prisoner's case."  Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").  And "even 'clear error' will not suffice."  White, 134 S. Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)).  "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011)).  Finally, this court presumes State court findings of fact are correct unless clear and convincing evidence rebuts them.  28 U.S.C. § 2254(e)(1).

Cornelius raises a single claim for relief in his petition.  He contends that his rights to a jury trial, due process, and presentation of a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated at his retrial for felony murder when the trial court employed offensive collateral estoppel by instructing the jury that, because a prior jury determined that he committed the burglary at Leon Conrad's house, it should consider the element that Petitioner committed a felony as having been proved.  (Pet. § 12.)

Cornelius unsuccessfully pursued this claim on the merits on

direct appeal in the North Carolina courts. The North Carolina Court

of Appeals considered and rejected the claim under both North

Carolina and federal law. Its analysis, which is somewhat lengthy,

is helpful to set forth in full:

> While defendant cites cases from other jurisdictions holding that offensive collateral estoppel is inappropriate in criminal cases, it appears that this Court's decision in State v. Dial, 122 N.C. App. 298, 470 S.E.2d 84 (1996), is controlling. In Dial, the defendant, who was indicted for first degree murder, contended that the State could not prove the murder occurred in North Carolina and, therefore, North Carolina's courts did not have jurisdiction. Id. at 302, 470 S.E.2d at 87. In the defendant's first trial, the trial court submitted the issue of jurisdiction to the jury. Id. Although the jury returned a special verdict finding that North Carolina had jurisdiction, it was unable to reach agreement on the defendant's guilt. Id.

> At the defendant's second trial, the trial court concluded that the special verdict had resolved the issue of jurisdiction and denied defendant's motion to set aside that verdict and dismiss the case for lack of jurisdiction. Id. On appeal, the defendant "argue[d] that the special verdict was not binding at his second trial so that the State should have been required to prove, beyond a reasonable doubt, the existence of jurisdiction to the same jury deciding his guilt or innocence at his second trial." Id. at 305, 470 S.E.2d at 88.

> In rejecting this argument, this Court noted:

>> The question before us, then, is whether the trial court's acceptance of the jury's special verdict finding that North Carolina has jurisdiction at defendant's first trial, prior to declaring a mistrial by reason of the jury's inability to agree upon the issue of guilt or innocence, precludes defendant from relitigating jurisdiction at his second trial. The question is apparently one of first impression. We believe, however, that it is

resolved by application of the settled
principles of res judicata and collateral
estoppel.

Id., 470 S.E.2d at 89.  The Court explained:

The doctrines of res judicata and collateral
estoppel apply to criminal, as well as, civil
proceedings, and their application against a
criminal defendant does not violate the
defendant's rights to confront the State's
witnesses or to a jury determination of all
facts.

In the present case, all the requirements
for precluding relitigation of the jurisdiction
issue have been met:  (1) the parties are the
same; (2) the issue as to jurisdiction is the
same; (3) the issue was raised and actually
litigated in the prior action; (4) jurisdiction
was material and relevant to the disposition of
the prior action; and (5) the determination as
to jurisdiction was necessary and essential to
the resulting judgment.

Id. at 306, 470 S.E.2d at 89 (internal citations omitted).
The Court, therefore, held "that the [trial] court's
acceptance of that special verdict of the jury at his first
trial finding that North Carolina has jurisdiction
precludes defendant from relitigating the issue of
jurisdiction at his second trial."  Id.

Defendant acknowledges that Dial "ostensibly
affirmed the offensive use of collateral estopped against
a defendant," but argues that it is "easily distinguished"
because the jury, in that case, "only resolved one very
limited question: the location of the crime."  To the
contrary, that purportedly "limited" question was
critical to any conviction — it resolved whether North
Carolina had jurisdiction to prosecute the defendant at
all.  See In re McKinney, 158 N.C. App. 441, 443, 581
S.E.2d 793 795 (2003) (holding that question of
jurisdiction is "'the most critical aspect of the court's
authority to act'" (quoting Harris v. Pembaur, 84 N.C. App.
666, 667, 353 S.E.2d 673, 675 (1987))).  Since the
defendant in Dial could not be convicted of murder without

the State's proving beyond a reasonable doubt the element
— jurisdiction — decided in the first trial, we find Dial
equally applicable when, as here, the prior verdict
accepted by the trial court established an element of the
crime of felony murder.

Defendant further argues that, regardless of Dial,
the United States Supreme Court has intimated (without
holding) that collateral estoppel in a criminal case is
inappropriate, pointing to a footnote in the plurality
opinion of United States v. Dixon, 509 U.S. 688, 710 n.15,
113 S. Ct. 2849, 2863 n.15, 125 L.Ed.2d 556, 577 n.15
(1993). In that footnote, the plurality[1] addressed a
concern by the dissenting opinion that the plurality's
overruling of the "same conduct" Double Jeopardy test
established by Grady v. Corbin, 495 U.S. 508, 110 S. Ct.
2084, 109 L.Ed.2d 548 (1990), would result in prosecutors
bringing separate prosecutions to perfect their case.
Dixon, 509 U.S. at 710 n.15, 113 S. Ct. at 2863 n.15, 125
L.Ed.2d at 577 n.15. In dismissing that concern, the
plurality opinion noted that prosecutors would "have
little to gain and much to lose from such a strategy.
Under Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25
L. Ed. 2d 469 (1970), an acquittal in the first prosecution
might well bar litigation of certain facts essential to
the second one — though a conviction in the first
prosecution would not excuse the Government from proving
the same facts the second time." Id.

This plurality opinion was decided, however, in 1993
– three years before Dial was decided in 1996. Because
defendant has not cited a case suggesting that Dial was
overruled, and Dixon does not squarely conflict with Dial,
we are bound by Dial. See In re Civil Penalty, 324 N.C.
373, 384, 379 S.E.2d 30, 36 (1989).

Moreover, the holding in Dial is consistent with
State v. O'Neal, 67 N.C. App. 65, 312 S.E.2d 493, aff'd
as modified on other grounds, 311 N.C. 747, 321 S.E.2d 154
(1984). In O'Neal, the jury in the first trial reached
agreement on six special verdict issues but could not agree

---

[1] While parts of Justice Scalia's opinion in Dixon spoke only for a plurality
of the Court, footnote fifteen falls within Part IV that garnered the votes
of a majority of the justices. See Dixon, 509 U.S. at 691.

on the seventh issue. Id. at 66, 312 S.E.2d at 494. The
defendant requested a mistrial on the seventh issue alone,
but the trial court declared a mistrial . . . on all
issues. Id. at 67, 312 S.E.2d at 494. On appeal, this
Court concluded that because "the jury has heard the
evidence, deliberated, and without error returned a
verdict as to the other six issues, no new trial is required
on these issues" and "[n]either the State nor defendant
is entitled to one." Id. at 71, 312 S.E.2d at 497
(emphasis added).

Here, a jury "heard the evidence, deliberated, and
without error returned a verdict," id., of guilty of first
degree burglary. The defendant was not, therefore,
entitled to retry in the second felony murder trial the
issue whether defendant had committed the felony of first
degree burglary. Indeed, defendant does not dispute that
if we conclude that offensive collateral estoppel can
apply in a criminal case, then the trial court properly
instructed the jury. Accordingly, we find no error in
defendant's trial.

Cornelius, 723 S.E.2d at 787-89.

Cornelius argues that Ashe v. Swenson, 397 U.S. 436 (1970), is

clearly established Supreme Court precedent that prohibits the use

of offensive collateral estoppel in his case and that the North

Carolina Court of Appeals' decision was therefore contrary to, or

an unreasonable application of, that holding. (Doc. 8 at 5.) As

is apparent from the above, this argument differs from that which

Cornelius advanced to the North Carolina Court of Appeals. See

Cornelius, 723 S.E.2d at 788 (noting that Defendant argued that "the

United States Supreme Court has intimated (without holding) that

collateral estoppel in a criminal case is inappropriate") (emphasis

added). Nevertheless, Ashe does not extend as far as Cornelius now

seeks to have it go.

In Ashe, four men committed an armed robbery of six men playing poker. 397 U.S. at 437. The petitioner was tried for robbing one of the men, with the critical issue being identity. Id. at 438–39. After the petitioner was acquitted, prosecutors tried him for robbing a second of the six victims, and the petitioner was convicted. Id. at 439–40. He objected, however, on the ground that the second trial violated his right against double jeopardy under the United States Constitution because the first jury necessarily found that he was not one of the robbers. When the case reached the Supreme Court of the United States on collateral review, the Court reversed, holding that defensive collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy." Id. at 446. In so doing, the Court accepted that "collateral estoppel has been an established rule of federal criminal law" for "more than 50 years." Id. at 443 (citing prior cases applying res judicata as a bar to a second trial). But the issue before the Court was its application "in every case where the first judgment was based upon a general verdict of acquittal." Id. at 444. The Court's holding, therefore, was limited to a defendant's right to rely on collateral estoppel defensively to avoid being put in double jeopardy. Ashe did not consider, much less hold, as Cornelius claims, that offensive

collateral estoppel is prohibited in criminal cases.[2]

Cornelius also argues that even if collateral estoppel could be used offensively in a criminal case, Ashe requires that there be a final judgment before the doctrine can apply. Because the court entered a prayer for judgment continued as to the jury's burglary verdict in his first trial, he contends, there was no final judgment to apply for the felony murder charge, as required by the doctrine. Even assuming that Cornelius did not waive this argument in the State court, see Cornelius, 723 S.E.2d at 789, there are at least two difficulties with it in the habeas context.

First, although Ashe noted the issuance of a "valid and final judgment" as a traditional requirement for collateral estoppel, 397

---

[2] The closest support for Cornelius' position appears in Chief Justice Burger's dissent, where he stated that "courts that have applied the collateral-estoppel concept to criminal actions would certainly not apply it to both parties, as is true in civil cases, i.e., here, if Ashe had been convicted at the first trial, presumably no court would then hold that he was thereby foreclosed from litigating the identification issue at the second trial." Id. at 464–65. To be sure, this was not a holding. A review of the cases cited in Ashe reveals that none addressed the use of offensive collateral estoppel in a criminal proceeding. See, e.g., Coffey v. United States, 116 U.S. 436, 443–44 (1886) (finding that following a prior acquittal, the Double Jeopardy Clause precluded government's attempt to seek forfeiture, but noting that "[w]hether a conviction on an indictment under section 3257 could be availed of as conclusive evidence in law for a condemnation in a subsequent suit in rem under that section, and whether a judgment of forfeiture in a suit in rem under it would be conclusive evidence in law for a conviction on a subsequent indictment under it, are questions not now presented") (emphasis added); Frank v. Mangum, 237 U.S. 309, 333–34 (1915) (noting that "it is not necessary, for the purposes of the present case, to invoke the doctrine of res judicata"); Sealfon v. United States, 332 U.S. 575 (1948) (applying res judicata to bar prosecution for substantive offense where a jury acquitted petitioner of a related conspiracy offense in an earlier trial).

U.S. at 443, the contours of that requirement were not at issue in the case. Furthermore, Ashe only incorporated the requirements of collateral estoppel into the Double Jeopardy Clause as a defensive, procedural protection. Id. at 445–46 & n.10. As Cornelius concedes, the prosecution's offensive use of collateral estoppel does not implicate the Double Jeopardy Clause but rather a criminal defendant's constitutional rights to a jury trial, due process, and presentation of a defense. (Doc. 7 at 1.)

Second, it is true, as Cornelius argues, that North Carolina does not always treat a prayer for judgment continued as a final judgment. See, e.g., Florence v. Hiatt, 400 S.E.2d 118, 120 (N.C. Ct. App. 1991) (discussing differences in types of prayers for judgment continued); State v. Soles, 369 S.E.2d 89, 89 (N.C. Ct. App. 1988) (finding trial court erred in considering, as an aggravating factor during sentencing, a prior conviction with prayer for judgment continued because no judgment was entered). But under some circumstances, a prayer for judgment continued is deemed sufficiently firm to be given preclusive effect. See, e.g., United States v. Nichols, No. 98-4643, 1999 WL 486829, at *1 (4th Cir. July 12, 1999) (holding that a prayer for judgment continued under North Carolina law constitutes a prior conviction under the U.S. Sentencing

Guidelines Manual);[3] <u>Seay v. United States</u>, No. 4:10-CV-70276, 2011 WL 891919, at *4 (D.S.C. Mar. 11, 2011) (same); <u>Britt v. N.C. Sheriffs' Educ. & Training Standards Comm'n</u>, 501 S.E.2d 75, 77 (N.C. 1998) (holding that entry of prayer for judgment continued following acceptance of plea of no contest properly construed as conviction for purposes of revocation of deputy sheriff's certification); <u>State v. Sidberry</u>, 448 S.E.2d 798, 800-01 (N.C. 1994) (holding that guilty plea constituted a conviction despite fact it was followed by entry of a prayer for judgment continued).

Here, the State trial court's burglary verdict was not converted to judgment after the first trial because the court had decided to postpone imposition of sentence (which, in the ordinary case, would have been conducted immediately upon entry of verdict) until the related felony murder charge was resolved.  The North Carolina Court of Appeals relied on two State cases to explain why it found Cornelius' prayer for judgment continued to be sufficiently firm to be accorded preclusive effect.  See <u>State v. O'Neal</u>, 312 S.E.2d 493, 497 (N.C. Ct. App. 1984) (giving preclusive effect to six issues found by a jury's special verdict when only the seventh issue resulted in

---

[3] Unpublished decisions of the Fourth Circuit are not binding precedent. See <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

a mistrial),[4] aff'd as modified, 321 S.E.2d 154 (N.C. 1984); State

v. Dial, 470 S.E.2d 84, 89 (N.C. 1996) (giving preclusive effect to

prior jury's special verdict finding that the crime at issue occurred

in North Carolina, even though the prior case ended in a mistrial

because the jury could not agree on guilt or innocence).  This

determination, resting on interpretation of State law, is not wholly

lacking in support, at least in the civil context where the

final-judgment requirement for collateral estoppel is not as

exacting as that in the res judicata context.  See Restatement

(Second) of Judgments § 13 (1982) ("'[F]inal judgment' includes any

prior adjudication of an issue in another action that is determined

to be sufficiently firm to be accorded conclusive effect."); id. § 13

cmt. g, illus. 3 (noting that in "split" civil trials where one jury

considers liability and a subsequent jury considers damages, a

finding of negligence in the first trial may be held conclusive as

to that defendant "in any other action between them in which the same

issues appear"); Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir.

2000) ("It is widely recognized that the finality requirement is less

---

[4] O'Neal represents the use of defensive collateral estoppel.  As noted
previously, the defendant objected to the trial court's grant of a mistrial
as to all seven of the first jury's verdicts on the special issues instead
of as to only the jury issue resulting from the erroneous instruction.  The
defendant argued that he benefitted from the six verdicts because they
supported his claim of self-defense.  In this context, the court of appeals
read Ashe not to require a "valid and final judgment" for collateral
estoppel purpose and thus held that retrial on the "untainted issues," over
the defendant's objection, would subject the defendant to double jeopardy
even though no final judgment had been entered.  O'Neal, 312 S.E.2d at 497.

stringent for issue preclusion than for claim preclusion."); 18A Charles Alan Wright, Federal Practice and Procedure § 4434 (2d ed. 2002) ("Recent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief.").

None of this is to say that the Supreme Court, *if presented with the issue*, would hold that offensive collateral estoppel can be used in criminal cases in the fashion employed here. The important point on habeas review is that the State court interpreted its law so as to treat Cornelius' prayer for judgment continued as sufficient for the purposes of collateral estoppel. Nothing in Ashe holds that this is prohibited, and Cornelius points to no United States Supreme Court precedent which forbids this construction of North Carolina law by its courts.

Next, Cornelius relies on the footnote in United States v. Dixon, 509 U.S. 688 (1993), that was addressed in the North Carolina Court of Appeals' decision. On direct appeal (not habeas), Dixon addressed whether double jeopardy protections barred certain prosecutions, which is assuredly not the issue presently before the court. In any event, Justice Scalia's opinion, in discussing how

a second prosecution is not barred for an offense distinct from the first, addressed a concern raised by Justice Souter and stated:

> But in any case, Justice SOUTER's concern that prosecutors will bring separate prosecutions in order to perfect their case seems unjustified. They have little to gain and much to lose from such a strategy. Under *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), an acquittal in the first prosecution might well bar litigation of certain facts essential to the second one — *though a conviction in the first prosecution would not excuse the Government from proving the same facts the second time*.

Id. at 710 n.15 (emphasis added). Cornelius reads this entire statement as a summary of Ashe. It is one possible reading, but another is that the reference to Ashe applies only to the fact that "an acquittal in the first prosecution might well bar litigation of certain facts essential to the second one" and not to the remaining portion of the sentence upon which Cornelius relies. Whatever the scope of the reference to Ashe, the footnote in Dixon is not the holding of the Court. Id. at 705 ("Of course the collateral-estoppel issue is not raised in this case."). It is merely dicta responding to a concern expressed in a dissenting opinion. Therefore, Dixon neither stands for the proposition that offensive collateral estoppel is barred in criminal cases nor holds that Ashe stands for that proposition. Accord State v. Scarbrough, 181 S.W.3d 650, 655 (Tenn. 2005) (holding as matter of first impression that State's use of offensive collateral estoppel violates a defendant's State

constitutional right to jury trial, yet recognizing that <u>Dixon's</u> statements were dicta and <u>Ashe</u> only upheld the use of defensive collateral estoppel).

In the end, <u>Ashe</u> and <u>Dixon</u> do not prohibit the use of offensive collateral estoppel in criminal cases, and Cornelius points to no other Supreme Court case that so holds. For that reason, the decision of the North Carolina Court of Appeals was not "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Further, it is equally true that the decision is not an "unreasonable application" of Supreme Court precedent. As both parties acknowledge, after <u>Ashe</u>, courts have not been unanimous in determining the propriety of employing offensive collateral estoppel in criminal cases. See <u>United States v. Rosenberger</u>, 872 F.2d 240, 242 (8th Cir. 1989) (holding that criminal defendant could not challenge search warrant previously challenged in a separate action); <u>Hernandez-Uribe v. United States</u>, 515 F.2d 20, 22 (8th Cir. 1975) (holding that collateral estoppel prevented defendant from litigating his citizenship status after admitting his status as part of a guilty plea in a prior proceeding); <u>United States v. Colacurcio</u>, 514 F.2d 1, 4-6 (9th Cir. 1975) (stating that offensive collateral estoppel applies in criminal cases, but that the extent of the

doctrine is unclear);[5] but see United States v. Smith-Baltiher, 424
F.3d 913, 920 (9th Cir. 2005) (accepting government's concession that
the use of offensive collateral estoppel is not proper); United
States v. Arnett, 353 F.3d 765 (9th Cir. 2003) (accepting
government's confession of error in relying on offensive collateral
estoppel); United States v. Gallardo-Mendez, 150 F.3d 1240, 1244
(10th Cir. 1998) (rejecting use of offensive collateral estoppel in
immigration case based on prior guilty plea); United States v.
Pelullo, 14 F.3d 881, 896 (3d Cir. 1994) (requiring government to
prove all essential facts anew in a criminal trial); United States
v. Harnage, 976 F.2d 633, 636 n.2 (11th Cir. 1992) (noting that use
of offensive collateral estoppel in criminal cases would implicate
due process rights); People v. Goss, 521 N.W.2d 312, 316 (Mich. 1994)
(holding that offensive collateral estoppel does not apply in a
criminal case); State v. Ingenito, 432 A.2d 912, 916–17 (N.J. 1981)
(same); Scarbrough, 181 S.W.3d at 654–58 (rejecting use of offensive
collateral estoppel in criminal cases and noting that federal courts

---

[5]  A case preceding Ashe reached the same result.  People v. Ford, 416 P.2d
132, 138 (Cal. 1966) (en banc) ("It follows that the doctrine of res judicata
justifies instructions, where relevant, that a defendant has been found
guilty of crimes finally adjudicated which are charged as elements in
another charge or charges then in the process of being retried.
Accordingly, it was not error for the trial court to give appropriate
instructions that defendant had been convicted of the various felonies,
and that if they found that defendant's commission of such felonies was
conjoined with his commission of the homicide, they might predicate their
verdict on the felony-murder rule . . . ."), overruled in part on other
grounds, People v. Satchell, 489 P.2d 1361 (Cal. 1971).

allowing it appear "to reflect a decidedly minority view").

While it appears the more accepted approach is to prohibit the use of offensive collateral estoppel in criminal cases, the lack of unanimity is evidence that the principle is not clearly established federal law, as determined by the Supreme Court.  See Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (evidence that lower courts have "diverged widely" shows that a State court did not unreasonably apply clearly established federal law); Miller v. Colson, 94 F.3d 691, 698 (6th Cir. 2012) (noting that a "disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established"); Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002) (observing that "[w]hen the federal circuits disagree on the application of [a Supreme Court precedent], it is difficult to say the [State] court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court").[6]  North Carolina's view may well be a minority view, but it is not one which is "beyond any possibility for fairminded disagreement."  White, 134 S. Ct. at 1702. Therefore, Cornelius cannot meet the deferential standards of § 2254(d).

Cornelius next argues that "[e]ven if there is no clearly

---

[6] Cornelius' reliance on those cases that on direct review hold that the use of offensive collateral estoppel is prohibited, see Doc. 8 at 8–10, is therefore not controlling in the habeas context.

established federal law prohibiting the use of offensive collateral estoppel under the circumstances of this case, Teague [v. Lane, 489 U.S. 288 (1989),] allows for the creation of a new rule on habeas review if it falls under one of two exceptions." (Doc. 8 at 11.) Thus, Cornelius alternatively asks this court to create a new, retroactive rule on habeas review prohibiting the offensive use of collateral estoppel in criminal cases.

It is unclear whether the lower federal courts have the authority under Teague to create and apply a new rule on habeas review. Considerable authority suggests that only the Supreme Court can do so. See Brian R. Means, Federal Habeas Manual § 7:31 (2014 ed.) (collecting authorities).

But even assuming, without deciding, that this court has the authority to announce a new retroactive rule on habeas review, Cornelius' argument still fails. Teague predated § 2254(d) and bars new rules from being applied on habeas review except in two cases: where the new rule (1) "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'"; or (2) is a "watershed rule[] of criminal procedure." Teague, 489 U.S. at 307, 311 (quoting Mackey v. United States, 401 U.S. 667, 692 (1971)). Cornelius concedes that Teague's first exception does not apply here. (Doc. 8 at 11.) Thus, only the second exception is at issue – and it is very narrow.

The second Teague exception permits a new rule when it is a "watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Whorton v. Bockting, 549 U.S. 406, 417 (2007) (internal quotation marks and brackets omitted). Since Teague, the Supreme Court has yet to find a new watershed rule. Id. at 418 ("And in the years since Teague, we have rejected every claim that a new rule satisfied the requirements for watershed status."). If a rule is going to be deemed "watershed," it must satisfy two requirements: "First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Id. (citations and internal quotation marks omitted). The rule Cornelius seeks meets neither requirement. The Supreme Court has stated that "guidance" on these requirements can be found by comparing the proposed rule to the watershed rule created by Gideon v. Wainwright, 372 U.S. 335 (1963), which held that "counsel must be appointed for any indigent defendant charged with a felony." Whorton, 549 U.S. at 419 (contrasting the rule announced in Gideon to the rule announced in Crawford v. Washington, 541 U.S. 36 (2003)). Gideon found that, "[w]hen a defendant who wishes to be represented by counsel is denied representation, . . . the risk of an unreliable verdict is intolerably high." Id.

In this case, the State's use of offensive collateral estoppel did not create an intolerably high risk of an unreliable verdict. Cornelius was convicted of a felony – burglary – in his first trial, while a mistrial was declared on the murder charge. There is no evidence that the burglary conviction was an unreliable verdict. In Cornelius' second trial for felony murder, the jury was instructed that the underlying felony – burglary – had already been proven beyond a reasonable doubt. In essence, the second jury was instructed to rely on an admittedly reliable verdict. It is difficult to say that such reliance rendered the later felony murder conviction inaccurate. Every element of the burglary and felony murder charges was found by a jury to be proven beyond a reasonable doubt. Just because the elements of felony murder were found by two juries at two different times does not "intolerably" diminish the accuracy of the final conviction.

Although failing this requirement is enough to bar Cornelius, under the second requirement, his petition is likewise doomed. His proposed prohibition on the offensive use of collateral estoppel does not "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding" in the same way Gideon did. Whorton, 549 U.S. at 419 (internal quotation marks omitted). The Supreme Court's discussion in Saffle v. Parks, 494 U.S. 484 (1990), is just as applicable here: "Whatever one may think of the

22

importance of [petitioner's] proposed rule, it has none of the primacy and centrality of the rule adopted in <u>Gideon</u> or other rules which may be thought to be within the exception." <u>Id.</u> at 495 (emphasis added). As evidenced by the split in the cases on whether use of offensive collateral estoppel should be allowed in criminal cases, Cornelius' proposed rule would do little more than clarify an issue "over which reasonable jurists may disagree." <u>Sawyer v. Smith</u>, 497 U.S. 227, 234 (1990).[7]

Finally, Cornelius claims that the use of offensive collateral estoppel in his case "violated Petitioner's rights to present a defense, a fair trial and due process." (Doc. 8 at 13.) The recurring problem for Cornelius is that, to be entitled to relief, he must still satisfy § 2254(d) by pointing to clearly established

---

[7] Even if this court has the authority to create and apply on habeas review a new rule of criminal procedure that Cornelius could show would be a watershed one, it remains an open question whether the <u>Teague</u> exceptions are themselves permitted under § 2254(d)(1)'s relitigation bar. As the Supreme Court recently noted, "[w]hether § 2254(d)(1) would bar a federal habeas petitioner from relying on a decision that came after the last state-court adjudication on the merits, but fell within one of the exceptions recognized in <u>Teague</u>, 489 U.S., at 311, 109 S. Ct. 1060, is a question we need not address to resolve this case." <u>Greene v. Fisher</u>, 132 S. Ct. 38, 44 n.* (2011). The Fourth Circuit has suggested that the exceptions do not survive AEDPA's enactment: "In fact, § 2254(d)(1) can be seen as stricter in that it does not recognize <u>Teague</u>'s two traditional exceptions which permit retroactive application of new rules which either 'place[] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' or are 'watershed rules of criminal procedure.' <u>See</u> <u>Green</u>, 143 F.3d at 873 (quoting <u>Teague</u>, 489 U.S. at 311-12, 109 S. Ct. 1060)." <u>Ramdass v. Angelone</u>, 187 F.3d 396, 407 n.4 (4th Cir. 1999), <u>aff'd in part</u>, 530 U.S. 156 (2000). Because Cornelius does not propose a qualifying watershed rule of criminal procedure, the court need not address this issue.

federal law – in the form of a Supreme Court holding – that supports his arguments.  He does not do so.  He simply sets out the standard found in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1983) for determining on habeas review whether an error by a trial court is serious enough to merit relief.  Therefore, this final argument also fails.

**III. CONCLUSION**

This case highlights the limits of habeas review.  Had the claim been raised here on direct review, Cornelius would present a more formidable argument.  <u>See, e.g.</u>, <u>Pelullo</u>, 14 F.3d at 896 (holding that "such a right to a jury trial necessitates that every jury empaneled for a prosecution considers evidence of guilt afresh and without the judicial direction attending collateral estoppel").  But under the deferential standards of habeas review, the claim must be denied.

For the reasons set forth above, therefore,

IT IS ORDERED that Respondent's Motion for Summary Judgment (Doc. 5) is GRANTED, that Petitioner's Motion for Summary Judgment (Doc. 7) is DENIED, that the Petition (Doc. 1) is DENIED, and that this action is DISMISSED WITH PREJUDICE.

Finding neither a substantial issue for appeal concerning denial of a constitutional right affecting the conviction nor a debatable procedural ruling, the court denies a certificate of appealability.

```
                                        /s/   Thomas D. Schroeder
                                     United States District Judge
September 29, 2014
```